Youssef H. Hammoud (P85894)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
Tel: (949) 301-9692
Fax: (949) 301-9693
E: yh@lawhammoud.com
*Attorneys for Plaintiff,*
*Mohamad Aboukhodr*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MOHAMAD ABOUKHODR,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1-10,<br><br>Defendant(s). | Case No. 2:23-cv-10395<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* |

Plaintiff Mohamad Aboukhodr ("Plaintiff"), by and through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Does 1-10 ("Defendants" or "Does 1-10").

### **PRELIMINARY STATEMENT**

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants. Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's "consumer reports" as defined in 15 U.S.C. § 1681a(d), and consequently reported inaccurate information about Plaintiff.

1

2. Does 1-10 reported derogatory criminal information about Plaintiff to third parties, including JPMorgan Chase Bank ("Chase"), and other unknown entities, when such derogatory criminal information belonged to someone other than Plaintiff.

## JURISDICTION

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681 et. seq.

4. Venue is proper under 28 U.S.C. § 1391(b) because the Defendants conduct significant business in this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

5. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6. Plaintiff is a natural person who resides in Wayne County, Michigan.

7. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. Does 1-10 are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined by 15 USC § 1681a(d), to third parties. Defendants also regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

9. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

10. During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## FACTUAL BACKGROUND

### A. Defendants Does 1-10 are Consumer Reporting Agencies

12. Defendants Does 1-10 regularly provides JP Morgan Chase Bank ("Chase") and/or its affiliated companies consumer reports on individuals, such as Plaintiff, so that Chase may make decisions whether to extend, or continue to extend, credit to such individuals.

13. Defendants Does 1-10 regularly engages in aggregating and leveraging information to help organizations, specifically financial institutions, identify and manage risks, specifically those risks associated with lending money to consumers whose information Defendants aggregate and leverage.

14. Specifically, Defendants seek to screen account holders or prospective account holders for such financial institutions to assist the financial institutions in making credit decisions not to lend money to those engaged in "money laundering, fraud, corruption, terrorism, organized crime, and other threats."

15. In addition to "credit risk," financial institutions may face penalties under the USA PATRIOT ACT and related regulations if they extend credit to an individual who is prohibited from engaging in the U.S. financial system. *See* 31 C.F.R. § 501 App. A, II (setting forth civil and criminal penalties for extending credit to an individual on the U.S. Department of Treasury's list of Specially Designations Nationals ("SDNs"), including terrorists, drug traffickers, and money launderers." *See also* U.S. Dep't of the Treasury, OFAC FAQs: General Questions,

3

https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_general.aspx (last visited February 14, 2023)

### B. Defendants' "Credit Risk" products are regulated by Federal Law

16. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

17. The FCRA covers the transmission of information that bears on the legality of extending credit to the consumer, including the sale of information through products intended for USA PATRIOT ACT compliance. *Cortez*, 617 F.3d at 707-08 (holding the sale of government watch list information is covered by the FCRA because "[i]t is difficult to imagine an inquiry more central to a consumer's "eligibility" for credit than whether federal law prohibits extending credit to that consumer in the first instance. The applicability of the FCRA is not negated merely because the creditor/dealership could have the OFAC Screen to comply with the USA PATRIOT Act, as well as deciding whether it was legal to extend credit to the consumer.").

18. The FCRA requires that credit reporting agencies ("CRAs") "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

19. The maximum possible accuracy standard "requires more than merely allowing for the *possibility* of accuracy," meaning that CRAs do meet that standard by suggesting that certain consumers are "possible" matches for individuals. *Ramirez v. Trans Union, LLC*, No. 12-cv-00632-JSC, 2017 WL 1133161, at *5 (N.D. Cal. Mar. 27, 2017) (quoting *Cortez*, 617 F.3d at 709) (emphasis added).

20. In 2010, the U.S. Court of Appeals for the Third Circuit found in *Cortez* that a CRA acted "reprehensibly" and was in willful violation of FCRA

section 1681e(b) by using only first and last name to associate consumers with criminal prohibited from conducting financial transactions in the United States. 617 F.3d at 707-08, 723.

21.     Later, a court in the Northern District of California certified the FCRA section 1681e(b) claims of a class of 8,192 individuals whose information had been inaccurately associated with criminals on the same government watch list at issue in *Cortez* by a CRA. *Ramirez v. Trans Union, LLC,* 301 F.R.D. 408, 413 (N.D. Cal. Nov. 7, 2017 (upholding jury's verdict).

22.     Moreover, CRAs may not shift their duty to accuracy onto the users of the information that they sell. *Ramirez*, 2017 WL 1133161, at *4 (*citing Cortez*, 617 F.3d at 708).

**C. Defendants' procedures for attribution and sale of adverse public records**

23.     Defendants Does 1-10 are a consumer reporting agency specializing in the sale of consumer reports to financial institutions for the purpose of assisting financial institutions in evaluating credit risk and making decisions as to whether to lend money to consumers.

24.     Defendants operate a unified screening business, where the same policies and procedures apply to both, and employees have duties and responsibilities that span both.

25.     Defendants Does 1-10 are regulated by the FCRA.

26.     As part of its screening business, Defendants Does 1-10 offer a product which purports to search database of records of criminal proceedings and other public records bearing on individuals' eligibility for credit, and include the results of such searches on the consumer reports Defendants compiles and sells.

27.     Defendants' practices for matching information obtained to individuals on the consumer reports it sells are uniform and not unique to each consumer or transaction.

28. In preparing reports, Defendants Does 1-10 fail to follow reasonable procedures to assure the maximum possible accuracy of the information it sells about consumers, regularly making inaccurate associations between innocent people and criminals as well as other individuals who are ineligible for credit in the United States.

29. Defendants rely upon wholly inadequate matching procedures to associate individuals who are the subject of its screening reports, regularly placing information on consumer reports using only a name.

30. Defendants intentionally employ procedures that maximize the likelihood that its searches will return a result, which comprises accuracy.

31. Defendants reporting of adverse public record information is not accidental, but instead a result of deliberately designed policies and procedures.

32. At all relevant times, Defendants conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of Defendants, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiff.

### D. Defendants prevent consumers from learning about their role in adverse actions

33. Consumer reporting agencies "may not prohibit a user of a consumer report furnished by the agency on a consumer from disclosing the contents of the report to the consumer, if adverse action against the consumer has been taken by the user based in whole or in part on the report." 15 U.S.C. § 1681e(c); *Meyer v. National Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1100 (N.D. Cal. 2014) (prohibition on disclosure of reports gives rise to FCRA cause of action).

34. Despite the FCRA's clear statutory language, Defendants, upon information and belief, as a matter of standardized policy, practice and procedure

6

prohibit the users (i.e., Chase) from disclosing the reports to consumers under any circumstances, or even from disclosing to consumers that Defendants provided a report at all.

35. Consumers thus remain utterly in the dark about Defendants' role in the screening process, effectively precluding them from disputing and correcting the harmful inaccurate information reported to current and prospective creditors.

### E. Defendants do not disclose to consumers the adverse public records it maintains and sells about them

36. Even in the unlikely event that a consumer learns of Defendants and makes a request for information, Defendants refuse to respond to consumers' requests for information as required by the FCRA.

37. The FCRA mandates that consumer reporting agencies provide consumers with access to the information sold about them to third parties and also provide consumers with an opportunity to review and dispute any inaccuracies in their credit file. 15 U.S.C. §§ 1681g(a) and 1681i(a).

38. Specifically, each consumer reporting agency is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial, and in other limited circumstances. *See* 15 U.S.C. § 1681g(a).

39. Companies that that compile and sell public records to financial institutions for purposes of establishing an individual's eligibility for credit, including based upon USA PATRIOT ACT compliance concerns, must comply with FCRA section 1681g(a) by responding to consumer file requests. *Cortez*, 617 F.3d at 711-12 (government watch list data intended for USA PATRIOT ACT compliance must be disclosed to consumers upon request).

40. Although Defendants regularly report public record information, including criminal records, to consumers' current or prospective creditors,

7

Defendants will not disclose these records to consumers who require their files as a matter of standardized policy and procedure.

41. Defendants' standardized refusal to respond to requests for information not only deprives consumers of statutorily mandated information that is essential to consumers' ability to ensure that the information being sold about them is complete and accurate, but also prevents them from making disputes pursuant to FCRA section 1681i.

### F. Plaintiff's experience

42. Plaintiff was issued multiple credit cards from JP Morgan Chase Bank ("Chase")

43. In or about the end of August of 2021, Plaintiff received a notice from Chase dated August 13, 2021 (the "Notice"), stating that it was closing his credit card accounts ending in 2505, 4194, 6429, and 6606 "because continuing the relationship creates possible reputational risk to [the] company."

44. The Notice indicated that Chase would close all of Plaintiff's Accounts on September 11, 2021.

45. On or about September 11, 2021, Chase closed all of Plaintiff's accounts, including his checking, savings, and credit card accounts.

46. Plaintiff had an outstanding balance on some of the accounts and was not in default on the terms or payment at any time.

47. The closing of the accounts negatively affected Plaintiff's debt-to-credit ratios which are used in prevalent scoring models such as FICO.

48. Plaintiff did not understand what "reputational risk" Chase could be referring to in the Notice.

49. Chase's mysterious and unilateral termination of Plaintiff's existing credit accounts also caused Plaintiff worry and concern about his ability to obtain credit in the future. Without knowing what information Chase relied upon, or the

source of any such information, Plaintiff was – and still is – unable to fix or correct such information. As a result, Plaintiff fears that other accounts might be terminated or he will be denied other credit when he applies on the basis of such information.

50. Plaintiff contacted Chase and inquired about the reasons for the account closures.

51. However, Chase did not provide Plaintiff with any information other than what the Notice stated – that Plaintiff created a "possible reputation risk to [the] company."

52. Sometime prior to August 13, 2021, Defendants had reported inaccurate information about Plaintiff to Chase, that led Chase to believe that continuing to do business with Plaintiff was a reputational risk.

53. Plaintiff has no criminal record and has never been arrested.

54. Plaintiff has never missed a payment with Chase or any other creditor on any of his credit accounts.

55. Plaintiff is not a public figure; he is only a private citizen and a good customer of Chase who could not possibly cause reputational harm.

56. Defendants willfully and/or negligently failed to follow reasonable procedures when they provided Chase with inaccurate information about Plaintiff, resulting in Chase closing all of Plaintiff's accounts.

57. Plaintiff attempted to learn the identity of Defendants Does 1-10 from Chase prior to filing this lawsuit, however, Chase refused to provide any information about Defendants identity and/or the consumer file it received about Plaintiff containing inaccurate information.

58. Without the ability to identify Defendants Does 1-10 and obtain his credit file, Plaintiff is powerless to clear his good name through the FCRA's dispute process, and he remains a subject to other accounts being closed or being denied credit by other financial institutions who use consumer reports from the Defendants

9

to make credit decisions.

59. Defendants inaccurate and incomplete reporting of information to Chase defamed Plaintiff and caused him to suffer from severe emotional distress and mental pain and anguish, including but not limited to, stress, anxiety, fear, confusion, sleepless nights, and embarrassment.

60. In addition, Defendants actions caused harm to Plaintiff's credit score and credit worthiness.

## COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

61. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

62. The FCRA requires CRAs, like Defendants Does 1-10, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

63. Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report/s they published and maintained concerning Plaintiff.

64. Defendants knew or should have known of their obligations under the FCRA.

65. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases from which Defendants are on notice of their procedures when reporting consumers' information.

66. Additionally, Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA.

67. Despite having knowledge of these legal obligations, Defendants

willfully and knowingly breached their duties in violation of 15 U.S.C. § 1681e(b).

68. Accordingly, Defendants deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

69. Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

70. Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

71. As a result of Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: closure of all his credit accounts, damage to his credit standing, physical injury as a result of emotional distress, intense anxiety, stress, sleep deprivation, embarrassment, lost time, strain on his relationships, and inconvenience.

72. Defendants are direct and proximate causes of Plaintiff's damages.

73. Defendants are substantial factors in Plaintiff's damages.

74. Therefore, each Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C § 1681 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a) Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15

    U.S.C. § 1681n(a)(2),

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted this 14th day of February 2023.

        /s/ Youssef H. Hammoud
        Youssef H. Hammoud (P85894)
        **HAMMOUD LAW, P.C.**
        3744 E. Chapman Ave., #F12269
        Orange, CA 92859
        Tel: (949) 301-9692
        Fax: (949) 301-9693
        E: yh@lawhammoud.com
        *Attorneys for Plaintiff,*
        *Mohamad Aboukhodr*